1817.

LIVINGSTON
v.
LIVINGSTON.

P. H. LIVINGSTON, sole acting executor of P. P. LIVING-STON, *against* LIVINGSTON and others.

*October* 14 and *December* 6. In marshalling *assets*, the estate *descended* to the heir, is to be applied to the payment of debts before the estate *devised*, unless devised specially to pay debts.

After making his will, the testator conveyed his share of the real estate under the will of his deceased father, and which made part of the testator's real estate devised to his children, to trustees, to pay the debts of his father, and then in *trust* for the devisees of his father, and their representatives; held that this subsequent conveyance, being for the mere purpose of paying debts, was not a revocation of the will, beyond that particular purpose; but the trust, as to the residue, is for the devisees, and not for the heirs of the testator.

Where the personal estate is insufficient for the payment of the testator's or intestate's debts, a *Court of Probates,* under the act for that purpose, may sell the *real estate* of which the testator, or intestate, died *seised;* but not lands held *in trust* for the testator.

The *heir* is not entitled to contribution from the *devisee,* towards the satisfaction of creditors.

Nor does equity help a pecuniary legatee to throw a debt against the personal estate upon a devisee of land.

But different *devisees,* in respect to a charge on all the estate devised, must contribute, on a deficiency of assets, in proportion to the value of their respective interests; as to pay an annuity to the widow of the testator, or debts of the testator, remaining unsatisfied after the personal estate and all the real estate, undevised, had been exhausted.

THE bill, filed in *January,* 1803, stated that *Philip Philip Livingston,* father of the plaintiff, being seized of real and personal estate, in the island of *Jamaica,* and in this state, in *April,* 1784, made his will, by which, after giving his wife, in lieu of dower, 1000 pounds, his plate, furniture, &c. and an annuity, or rent charge of 600 pounds sterling, payable out of all his estate in *Jamaica,* and elsewhere, during her life, in half-yearly instalments, bequeathed to his seven children, and to such others as might afterwards be born, each 4000 pounds sterling, to be paid to them respectively, when they came of age, &c. all which legacies were to be paid, and made payable out

of, and chargeable on his real and personal estate in *Jamaica*, *exclusively*, and not on any other estate. The will directed, that his children should be brought up and educated at the charge of his estate, until their legacies were due and payable ; and authorized his executors, appointed for the island of *Jamaica*, to sell all his real estate and slaves, out of the parish of *St. Mary's* ; to complete a loan of 8,500 pounds of *H. A. & Co.* of *London*, by a mortgage on his estate, or to borrow elsewere, a sum not exceeding 10,000 pounds sterling, and to mortgage his estate in *St. Mary's*, for the repayment. All the residue of his estate in *Jamaica*, real and personal, he gave to the plaintiff in fee, with remainder over, in case he died under age, and without issue. And all his estate elsewhere, out of the island of *Jamaice*, he devised to his seven children, and such as should be afterwards born, as tenants in common, the plaintiff, being his eldest son, to have three shares, and the other children one share each. Five persons were nominated and appointed his executors, for the island of *Jamaica*, and to be guardians of his children, &c. there ; and four executors were nominated executors in *New-York*, for his estate out of *Jamaica*, and to be guardians of his children, and their estates out of that island ; and each of his sons, on arriving at full age, was to become an executor generally.

After making his will, the testator removed to *New-York*, where he resided, until his death, in 1787. At the time of making his will, he was considerably indebted, and afterwards, before his death, contracted other considerable debts. At the time of his death, the testator was entitled by the will of his father, *P. L.* of *New-York*, and by dessent, to some parts of his father's estate. The testator, and three other devisees of his father's estate, in 1784, conveyed their shares and proportions of the estate of *P. L.* deceased, to some person in fee, to the *use of Isaac Roosevelt, Robert C. Livingston*, and the testator, in

trust, to pay the debts of the said *P. L.* deceased, and then "*in trust for his devisees, and their representatives.*" On account of the infancy of *Henry A. L.* son of *Abraham L,* a deceased son, and devisee of *P. L.* an act of the legislature (*a*) was passed, vesting the estate of *P. L.* deceased, in *Alexander Hamilton, Brockholst L. John H. L.* and *Thomas Jones,* as trustees, in fee. The bill charged that after the payment of the debts, the said trustees became seised, as to one undivided part of the residue of the real estate of *P. L.* "in trust for the testator, (*P. P. L.*) or his legal representatives ;" but whether the will of the testator was revoked as to such part of *P. L.'s* estate, the plaintiff submitted to the court.

The will was proved in *Jamaica,* and in *New-York,* and the plaintiff is the sole acting executor there and here. The bill further stated, that the plaintiff had applied all the real and personal estate, excepting the *St. Mary's,* towards payment of the testator's debts ; and had executed a mortgage on the *St. Mary's* estate, for 10,000 pounds sterling, borrowed. That the funds proving insufficient, he applied, in the year 1794, under the statute of this state, to the court of probates, and obtained an order to sell the testator's real estate in *N. Y.* for the payment of the debts. That under this order, he had sold all the real estate of the testator in this state, and which had been purchased since the making of the will, and that the proceeds were still insufficient to pay the debts. That the debts of *P. L.* having been discharged, and the *trust,* above mentioned, survived to *John H. L.* and *B. L.* defendants, they were now seized of the real estate of *P. L.* in trust,

(*a*) The preamble to this act, passed the 25th of *February,* 1785, states the prayer of the testator, *P. P. L.* for the act, to be, that the estate should be conveyed "in trust, to convey the residue of the real estate (if any) to the several persons interested therein, according to the proportions they are entitled to of the same." The act, which operated on the real estate, declares that the residue is to go "to the persons, and in the manner and proportions specified and expressed in the deed of trust," &c.

as to one undivided part, for the legal representatives of the testator. (*P. P. L.*) That the plaintiff has paid to his brothers and sisters their several legacies of 4000 pounds sterling each; and has paid the legacy of 1000 pounds to the widow, and the annuity of 600 pounds, for 14 years during her life, she being now deceased. That wishing to discharge all the debts of the testator, the plaintiff had applied to the said trustees, to convey to him the proportion of the estate of *P. L.* deceased, held by them in trust for the testator, or his legal representatives, which they refused to do, alleging, that the estate of *P. L.* ought not to be applied to pay the debts of the testator, or the annuity to his widow, but that the same ought to be paid out of the testator's estate in the parish of *St. Mary's*, devised to the plaintiff.

The bill prayed for an account of all the debts owing by the testator, at his death, and of his real and personal estate, and of the application thereof by the plaintiff; and that the remaining assets of the testator may be applied in payment of his debts; and particularly, that the proportion of the estate of *P. L.* deceased, might be declared liable to the debts of the testator, *before* the estate in *Jamaica*, devised to the plaintiff; and that the trustees might be decreed to convey the part so held by them in trust for the testator; and that part of the annuity payable to the widow might be charged on the real estate in *New-York*; and the plaintiff be indemnified, &c.

The defendants, *John H. L.* and *B. L.* by their answer, filed *August* 29, 1803, admitted, that the testator, at the time he made his will, was entitled, under the will of his father *P. L.* to five twenty-fourth parts of the real and personal estate; that the debts, except a claim of *C. L.* had been discharged, and that they stood seised of five twenty fourth parts of the residue of that estate, to the use of the legal representatives of the testator, &c.

The other defendants answered, in 1806, admitting most

of the facts charged in the bill; but denying that the plaintiff had paid the legacies to his brothers and sisters, and insisting that the estate of *P L.* was not liable for the testator's debts, exclusively of the estate devised to the plaintiff; and they submitted whether the true estate was liable, at all, to the payment of the debts, or to contribute to the annuity to the widow.

Replications were filed but no witnesses were examined on either side.

The cause was brought to a hearing on the pleadings, on the 14th of *October*, 1817.

*Harison*, and *B. Robinson*, for the plaintiff.

*Riggs*, and *Wells*, for the defendants.

*December*, 6. The cause stood over for consideration until this day, when the following opinion was delivered by his honour:

THE CHANCELLOR. The great object of the bill is to convert the real estate held by two of the defendants, in trust, for the legal representatives of *Philip P. Livingston* deceased, and of whom the plaintiff is executor, *into assets*, for the payment of the debts still outstanding against that testator's estate.

The bill does not state the amount of the outstanding debts, nor who the creditors are. It only avers that the assets already applied for the purpose, have proved "utterly insufficient for the payment and discharge of the testator's debts." Here appears to be scarcely sufficient ground upon which the court ought to be called upon to act. The plaintiff, however, wishes to make the trust estate chargeable with the debts, (whatever they may be,) to the exemption of the real estate in the island of *Jamaica*, which was devised exclusively to himself. It is contended, that the trust estate *descended* undevised to the

heirs at law, and is, therefore, to be first chargeable; and also, that it is included in the order of the court of probates, directing the testator's real estate to be sold for the payment of debts.

I shall waive, for the present, any difficulty as to the want of explicitness and precision in the bill, and proceed to consider the question whether the plaintiff has any equitty to entitle him to charge the trust estate in exclusion of his own.

1. The general doctrine of the court in marshalling assets, is admitted to be, that the estate *descended* to the heir is to be charged with the debts before the estate *devised*; (unless it be devised specially for the payment of debts;) for if the devisee was to be made liable, in the first instance, it would defeat the gift, and, consequently, the intention of the testator. This rule was declared by Lord *Talbot*, in *Pitt* v. *Raymond*, (cited in 2 *Atk.* 434.) and acted upon by Lord *Hardwicke*, in *Galton* v. *Hancock*, (3 *Atk.* 430.) and by the court, in numerous cases since. (*Davies* v. *Topp*, note to 2 *Bro.* 259. *Wride* v. *Clark*, note to 2 *Bro.* 261. *Donne* v. *Lewis*, 2 *Bro.* 257.) The order in which assets were to be applied is distinctly stated by Lord *Thurlow* in *Donne* v. *Lewis*. Equity will even marshall the real assets *descended* to the heir, in favour of, or for the relief of specific legatees, but it will not, for such a purpose, interfere with the lands *devised*, unless they were devised subject to the payment of debts. (*Hanby* v. *Roberts*, *Amb.* 128. *Clifton* v. *Burt*, 1 *P. Wms.* 678. 5th resolution in *Haslewood* v. *Pope*, 3 *P. Wms.* 322. Lord *H.* in *Forester* v. *Leigh*, *Amb.* 172.) I apprehend, however, that none of this doctrine on which the counsel for the plaintiff seemed to rely, has any application to the case. The trust estate in question did not descend undevised to the heirs at law, but it passed under the testator's will, as part of his residuary estate out of the island of *Jamaica*.

The testator owned the property in question when he

1817.

LIVINGSTON
v.
LIVINGSTON.

*In marshalling assets, the estate descended to the heir is to be applied to the payment of debts, before the estate devised; unless devised specially to pay debts.*

*Equity will also marshall assets descended to the heir, in favour of, and for the relief of specific legatees.*

made his will, and devised a certain residuary estate (of which this formed a part) to his seven children, in unequal proportions. He, afterwards, with other devisees of the testator's father, conveyed this property to certain persons, in trust to pay the debts of his father, from whom he derived the estate, and then *in trust for his father's devisees and their representatives.* In other words, he conveys his interest in his father's estate, in trust, to pay his father's debts, and when that purpose is effected, the remainder to be held in trust for himself. An act of the legislature was, afterwards, passed, to carry this trust more completely into execution, and the preamble to that bill states the prayer of the petition of the testator and others to have been, that the surplus, if any, should be conveyed by the trustees, *to the several persons interested therein, according to their respective proportions.* The idea is uniformly kept up that the remainder of the property so conveyed in trust, was to return, and to be held and enjoyed as before. The act itself declares, that the residue was to go *to the persons, and in the manner and proportions specified and expressed in the deed, in trust.* The bill itself states, and the answers admit, that the trustees held the *residuum* of the estate belonging to the testator, in trust, *for the testator or his legal representatives.*

This conveyance in trust was no revocation of the will, beyond the mere purpose of paying the debts, because there was no alteration of the estate *beyond that purpose.*

It was the clear and manifest intention of the conveyance and other acts in trust, to appropriate the property in payment of debts, and to have the surplus restored to its former state and condition, without other or further alteration. The rules respecting these partial revocations, are deducible from a series of determinations of great judges in equity. The question of revocation has been much agitated, and laboriously discussed, but there is no one who has spoken with more clearness, or treated the

subject with more ability, than the Master of the Rolls, in *Harmood* v. *Oglander*, (6 *Vesey*, 199.) He has reviewed all the cases, and given us the collected result of his uncommon diligence and learning.

1817.

LIVINGSTON
v.
LIVINGSTON.

It is a settled principle in equity, that if a conveyance is only for a partial purpose of introducing a charge, and does not affect the interest of the testator, beyond that purpose, it is only a partial revocation of the will, and equity will hold the party a trustee, not for the heir, but for the devisees. A devise is not revoked in equity, by a mortgage in fee, or a conveyance in fee, for the payment of debts. The mortgagee is a trustee for the devisee, and the devisor continues owner as before, subject to the mortgage. So, after a devise, if a conveyance be made in fee, in trust to sell and pay debts, and the surplus of the personal estate to the testator and his executors, and the surplus of the lands to him and his heirs, this is no revocation in equity, and so it has been determined. If after the debts are paid, the trustee conveys to the *testator and his heirs*, that is no revocation, and if the estate should descend to the heir, he would be only a trustee for the devisee. This has been so held by Lord *Hardwicke* and Lord *Thurlow;* and the principle is settled. So, if the testator dies without taking back the legal estate, equity has only to decide to whom the beneficial interest belongs, and it holds the party a trustee for the devisee, and not for the heir, and directs a conveyance. When the testator, after making his will, conveys his estate in trust for the payment of debts, the estate is still, in contemplation of equity, in him substantially, and though the mode amounts to a revocation at law, (for a court of law has nothing to do with the purpose,) yet, subject to the debts, he remains, in equity, master of the estate, and the will continues to operate upon his interest. If he calls for a conveyance of the legal estate, his heir is a trustee for the devisee; and if he does not, but dies in the mean time, his trustee holds for

*A subsequent conveyance by a testator, in trust, for the payment of debts, and the residue for the testator, and such persons as would have held the same before the conveyance, is not a revocation of his will beyond such special purpose.*

1817.
LIVINGSTON
v.
LIVINGSTON.

the devisee, for his equitable interest still continued. (6 *Vesey*, 218—223.)

The doctrine thus laid down by Lord *Alvanley*, may also be collected from a series of other decisions. (*Hall* v. *Dench*, 1 *Vern.* 329. *Vernon* v. *Jones*, 2 *Vern.* 241. *Ogle* v. *Cook*, reported in 3 *Atk.* 746. 2. *Bro.* 592. *Jackson* v. *Parker*, *Amb.* 687. and the general observations of Lord *Hardwicke*, in *Parsons* v. *Freeman*, 3 *Atk.* 748. and in *Sparrow* v. *Hardcastle*, 3 *Atk.* 805. Lord *Rosslyn*, in *Bridges* v. *Dutchess of Chandos*, 2 *Vesey*, jun. 428, 429.) In the prior case of *Williams* v. *Owens*, (2 *Vesey*, jun. 599, 600. Lord *Alvanley* had explained, in the same way, the principle, which he shows was evidently established by Lord *Hardwicke*, in *Parsons* v. *Freeman*, " that wherever the estate is modified in a manner different from that in which it stood at the time of making the will, it is a revocation, but wherever the testator remains, after a conveyance for a mere particular purpose, as the payment of debts, seized of the same estate, and disposable by the same means, without any fresh modification, there is no revocation."

2. As I have considered that the estate in question was property *devised*, not *descended*, one main ground of the bill has failed, unless the estate can be considered as bound by the order of the Court of Probates, and that it is proper for this court to lend its aid in carrying that order into effect.

The order of the Court of Probates was made on the 28th of *April*, 1795, and that Court was authorized, on the application of executors or administrators, to examine the account of the personal estate and debts of the testator or intestate, and if it should find the personal estate insufficient, and that the same had been applied toward payment of the debts, the court was directed to order " the *real estate*, whereof such testator intestate *died seized*," to be sold, &c. (Act of the 4th *April*, 1786, ch. 27. s. 6.)

*The Court of Probates where the personal estate is insufficient for the payment of the debts of the testator or intestate, cannot, at the instance of the executor or administrator, order the sale of lands held in* trust *for the testator; his power under the act is over the* legal *estate, or that of which the testator or intestate died seized.*

This was a special and newly-created power over the real estate of the debtor, and I think the obvious and reasonable construction is, that it was to be confined to the legal estate. The seisin here meant, is a legal seisin, and it could not have been the policy or intention of the statute, to have given such a summary power over trusts, which cannot be reduced to possession, without the aid of a court of equity. Such an interest resting, in equity only, and charged with complicated, and, perhaps, uncertain and unascertained burdens, is not the fit subject of a public sale. The value of the interest may not be susceptible of a ready and accurate estimation. It would lead to sale on mere speculation, and to a sacrifice of the subject. The case of an equity of redemption is by no means analogous. The case rests on grounds peculiar to a mortgage; for the mortgagor, while in possession, and before foreclosure (and the decisions have gone no further,) is regarded, *at law*, as well as in equity, as the real owner of the land. In this very case, how could a purchaser know what to bid upon the equitable interest remaining in the testator, after the debts for which the trust had been created, were discharged? He had no means of knowing whether there would be any, and if any, what *residuum* of interest resulting to the testator, after the trust had fulfilled its object. It is perfectly clear, that a mere equitable interest, like the one in this case, was not within the purview of the statute, or the jurisdiction of the Court of Probates.

The great object of the bill has, then, failed. This trust estate is no more liable, in equity, to the outstanding debts, than the estate in *Jamaica*. The devisees in the one case, (who are all the children,) have as much equity as the plaintiff, who is the devisee in the other.

3. There is another prayer in the bill, which is for indemnity, and that part of the annuity payable to the testator's widow may be charged upon the trust estate.

1817.

LIVINGSTON
v.
LIVINGSTON.

1817.

LIVINGSTON
v.
LIVINGSTON.

The widow's annuity, though not her legacy, was made chargeable upon all the testator's estate in *Jamaica*, and elsewhere; and it is admitted that the plaintiff has paid the annuity as charged in the bill.

*The heir is not entitled to contribution from the devisee, towards the satisfaction of creditors.* The heir is not entitled to contribution from the devisee towards satisfaction of creditors. This was so declared by Lord *Hardwicke*, in *Palmer* v. *Mason*, (1 *Atk.* 505.) and in the case, already cited, of *Galton* v. *Hancock*. *Nor does equity help a pecuniary legatee, to throw the debt against the personal estate upon the devisee of land.* Nor will the court interfere and help a pecuniary legatee, to throw the debt against the personal estate, upon the devisee of land, for their equities are equal. (5th resolution in *Haslewood* v. *Pope*.) But here is a case arising between different devisees, in respect to a charge, to which their lands were equally bound by the will, and it is just, that the whole real estate should contribute in due and rateable proportions. Thus, *But different devisees, in respect to a charge on all the estate devised, must contribute, on a deficiency of assets, in proportion to the value of their respective interests.* in *Carter* v. *Barnadiston*, (1 *P. Wms.* 505. 509. 521.) two manors were devised, the one to A. and the other to B., and all the real estate was charged by the will, with payment of the debts. There was a mortgage debt upon one of the manors, and Lord Ch. *Cowper* held, that the devisee of the other, was bound to contribute proportionably, to the payment of that mortgage, *because the right of contribution was given by the will.* The same rule was declared in *Long* v. *Short*, (1 *P. Wms.* 403.) in the case of two specific devisees of land. The Lord Chancellor said, it would equally disappoint the intention of the testator, to defeat either devise, by subjecting it to the testator's debts, and therefore he held, that on a deficiency of assets, both estates must contribute, in proportion to the value of their respective premises.

*Where debts remain unsatisfied, after the personal estate and all the real estate not devised, are exhausted, the devisees must make up the deficiency of assets, according to the quantum and value of their respective interests.* The will, in the present case, is silent as to the debts, and it appears to be very equitable, that the debts remaining after the personal estate, and after the undevised real estate is exhausted, (and which is alleged to be the fact in this case,) should be borne in rateable proportions, by all to the quantum and value of their respective interests.

the devisees, according to the *quantum* and value of their respective interests. This case comes within the principle of those decisions. The law charges the debts upon the real estate.

I shall, accordingly, declare, that the trust estate is not, in equity, chargeable with the outstanding debts, any more than the *Jamaica* estate, and that it is not bound by the order of the Court of Probates mentioned in the bill; that the trust estate, however, ought to contribute rateably with the estate in the island of *Jamaica*, belonging to the plaintiffs, to the discharge of their debts, and to the payment of the annuity to the testator's widow. There must, accordingly, be a reference to a master, to take and state an account of the debts owing by the testator at his death, and of his real and personal estate, and of the application thereof, and the payments which have been made, and of the debts which still remain unpaid, their nature and amount, and how secured; and that the master take and state an account of the amount of the annuity of 600 pounds a year mentioned in the will, paid by the plaintiff, and the times when, and the interest thereon from each respective payment, and also the amount of the legacies due to the respective defendants, and of the interest thereon, from the time that the legatees respectively came of age; and that the master certify the amount and proportion that each devisee, as well the plaintiff as the defendants, is to contribute towards the payment of the said annuity and of the said outstanding debts, having due regard to the respective values of the estate in the island of *Jamaica*, belonging to the plaintiff, and of said trust estate, and to the proportion of interest which each of the devisees has in said trust estate; that the defendants *John H.* and *B. L.* account before the master for the rents, issues, and profits of the trust estate, in the proportion that 5 bears to 24, and that the master make them all just allowances properly chargeable, in such proportion, together

with their reasonable expenses, (if any,) in the defence of this suit, exclusive of the taxable costs, and that the question of costs and the question relative to the release of the said trust estate by the said trustees, and all other questions, be reserved until the coming in of the report.

Order accordingly.